Carmie BLANDO, Respondent,

v.

Georgianna REID and La Cuticle,
Inc., Appellants.

No. WD 47731.

Missouri Court of Appeals,
Western District.

Aug. 9, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 4, 1994.

Application to Transfer Denied
Nov. 22, 1994.

Robert L. Shirkey, Jack B. Robertson, Kansas City, for appellants.

Tedrich A. Housh, III, Swanson, Midgley, Gangwere, Kitchin & McLarney, Kansas City, for respondent.

Before SMART, P.J., and KENNEDY and ULRICH, JJ.

ULRICH, Judge.

Carmie Blando filed suit in equity to rescind her warranty deed transferring her interest in the house located at 103 East Meyer Boulevard, Kansas City, Missouri, to her granddaughter Georgianna Reid. Additionally, Ms. Blando sued Ms. Reid for alleged misuse of funds that belonged to Ms. Blando, alleging actual fraud, constructive fraud, breach of a fiduciary duty, and conversion. Ms. Blando also sued La Cuticle, Inc., owned in part by Ms. Reid and operated by her, for conversion. These claims arose from actions taken by Ms. Reid and La Cuticle with respect to Ms. Blando's ownership interest in the house at 103 East Meyer Boulevard and her checking and savings accounts. Ms. Blando sought rescission of the July 9, 1990, warranty deed, and actual and punitive damages from Ms. Reid and La Cuticle.

After the court trial, the trial court: 1) declared the warranty deed signed by Ms. Blando on July 9, 1990, void and set it aside; 2) ordered the property to be partitioned and sold and the deed of trust held by McGuire Investment Company be paid entirely from Ms. Reid's proceeds; 3) ordered Ms. Reid to pay Ms. Blando $20,707.67 in compensatory damages; and 4) ordered La Cuticle to pay Ms. Blando $5,000 in compensatory damages. Both Ms. Reid and La Cuticle appeal.

On August 28, 1981, Carmie and Frank Blando (husband and wife) and their granddaughter, Georgianna Reid, purchased a house located at 103 East Meyer Boulevard. The warranty deed granting title gave one half interest in the property to the Blandos and one half interest to Ms. Reid. After Frank Blando's death in 1984, Carmie Blando and Georgianna Reid each owned a one half interest in the property as tenants in common.

On July 1, 1990, Ms. Blando was admitted to Menorah Medical Center for surgery to address complications from a previous cataract surgery in June of 1990. Ms. Blando had surgery on her right eye on July 1, 1990, at approximately 3:00 p.m. In the period immediately following surgery, Ms. Blando was confused and in pain. The medical records reflect that at 10:20 p.m. on the evening of her surgery, the nurse on duty observed

that Ms. Blando "appears asleep but easily arousable," and that Ms. Blando "thinks she's at the bank."

On July 2, 1990, Ms. Reid visited Commerce Bank in Brookside to withdraw funds from accounts owned by Ms. Blando. James Edwards, the bank's branch manager, informed Ms. Reid that she could not withdraw funds from Ms. Blando's accounts unless she either was a joint owner or had a power of attorney signed by Ms. Blando. On that same day, Ms. Reid directed her attorney and business associate, Jack Robertson, to draft a power of attorney. Mr. Robertson took the power of attorney to Ms. Blando's hospital room. Ms. Blando signed it.

On July 3, 1990, Ms. Reid returned to Commerce Bank in Brookside with the signed power of attorney. The power of attorney named Ms. Reid as Ms. Blando's attorney-in-fact. Ms. Reid was accompanied by her attorney, Jack Robertson, with whom Ms. Reid owns the entire interest in La Cuticle, Inc.

Ms. Reid filled out the fiduciary forms necessary to permit her to make transactions on Ms. Blando's Commerce Bank accounts. Both Mr. Edwards, branch manager of the bank, and Jack Robertson, Ms. Reid's attorney, explained Ms. Reid's fiduciary duties to her. Ms. Reid acknowledged her understanding of those duties and checked the box marked "fiduciary" on the Commerce Bank forms. After this, Ms. Reid made a number of withdrawals from Ms. Blando's accounts.

Ms. Blando's checking account numbered 5–326–277–8 had a balance of $1,529.35 as of July 5, 1990, before Ms. Reid made any withdrawals. On July 25, 1990, the account had a balance of $1.83. Ms. Blando's savings account numbered 5–805–547–9 had a balance of $19,178.32, on June 22, 1990. On July 10, 1990, Ms. Reid, acting as attorney-in-fact for Ms. Blando, wrote a check for $5,000 on this account payable to her business, La Cuticle, Inc. On July 11, 1990, Ms. Reid, again acting as attorney-in-fact for Ms. Blando, transferred $13,498.23 from this savings account to an account belonging to Ms. Reid. On July 27, 1990, Ms. Blando's savings account had a zero balance.

The trial court found that the monies withdrawn from Ms. Blando's accounts were "utilized by Georgianna Reid for her own benefit and not the benefit of Carmie Blando." The trial court found that Ms. Reid "kept no records of Carmie Blando's funds from after July 2, 1990, and intermingled said funds with funds in her own personal checking accounts." The trial court found that Ms. Blando at "no time and in no way ratified the conduct of defendants Georgianna Reid or La Cuticle, Inc., and their treatment of Carmie Blando's proceeds as their own." Furthermore, the trial court found that Ms. Reid's and La Cuticle's "depositing of the above-mentioned funds into their accounts was accomplished without Carmie Blando's knowledge and consent."

On July 9, 1990, Ms. Reid arranged for Ms. Blando to sign a document entitled "Warranty Deed" which was subsequently recorded in Book 239, Page 291, in the office of the Recorder of Deeds for Jackson County, Missouri, and which purported to convey the property located at 103 East Meyer Boulevard to Ms. Reid. Jack Robertson drafted the warranty deed. Ms. Blando signed the deed in her hospital room at Menorah Medical Center while she was recuperating from complications related to her cataract surgery. At the time the warranty deed was executed, Ms. Reid, Jack Robertson, and Rita Dubin, a Notary Public employed by Menorah Medical Center, were present. The medical records show that Ms. Blando was in pain and disoriented on the day she executed the warranty deed.

The trial court found that Ms. Reid was active in procuring the execution of the deed and that Ms. Blando was "unaware of the nature and extent of the document she executed in her hospital room on or about July 9, 1990." Ms. Blando believed she was signing a document to transfer various funds between her banking accounts. The trial court also found that Ms. Blando

was not represented by independent counsel at the time the warranty deed was executed. Although Jack Robertson claimed to represent Carmie Blando in the execution of the warranty deed, he was also counsel for Georgianna Reid, the

grantee and La Cuticle, Inc., the ultimate sublessee of the Meyer Boulevard property.

The trial court further found that Ms. Blando "was unable to read the warranty deed as she was recuperating from complications related to her cataract surgery. Neither Jack Robertson nor Georgianna Reid explained, read, or otherwise described the contents of the warranty deed to Carmie Blando while notary public Rita Dubin was present." In addition, the trial court found that Ms. Blando received no consideration for execution of the warranty deed and that there was a confidential relationship between Ms. Blando and Ms. Reid wherein Ms. Blando manifested a special trust in Ms. Reid.

The trial court found that there was opportunity for Ms. Reid to exercise undue influence over Ms. Blando and the warranty deed was obtained by Ms. Reid's calculated and intentional efforts to mislead, deceive, defraud and trick Ms. Blando. The trial court further found that when Ms. Blando executed the warranty deed, she did not intend to convey any vested interest in the property located at 103 East Armour Boulevard.

Shortly after Ms. Blando signed the warranty deed, La Cuticle, owned by Jack Robertson and Ms. Reid, subleased the property at 103 East Meyer Boulevard from Ms. Reid. In August of 1990, Ms. Reid placed a lien on the property in the amount of $38,499.00 which was subsequently recorded as a Deed of Trust in Book 202, Page 849 in the office of the Recorder of Deeds for Jackson County, Missouri, on August 17, 1990.

Ms. Blando did not return to 103 East Meyer Boulevard immediately after her release from the hospital on July 15, 1990. She stayed at University Towers for recuperation until September 7, 1990. Ms. Blando then stayed with her daughter in Las Vegas, Nevada. In October of 1990, Ms. Blando moved back in the house at 103 East Meyer Boulevard with Ms. Reid, Ms. Reid's son, Raymond Reid, and his girlfriend, Lavina Lionburger. Ms. Blando moved out of the house in December of 1990 and this litigation ensued.

# I

In her first point, Ms. Reid argues that the "trial judge committed error in refusing to recuse himself because his comments prior to commencement of trial and because his findings of fact and conclusions of law overwhelmingly demonstrate that the defendants could not, under any circumstances, have obtained a fair trial, and that the trial judge violated the canons of judicial ethics." Specifically, Ms. Reid contends that the trial judge violated Rule 2, Canon 3(C)(1)(a) of the Missouri Supreme Court Rules which provides that, "[a] judge should recuse in a proceeding in which the judge's impartiality might reasonably be questioned including but not limited to instances where the judge ... has a personal bias or prejudice concerning the proceeding."

■ Ms. Reid's claim is based on the trial judge's participation in settlement talks. Before the trial began, the parties' attorneys asked the trial judge to recommend a settlement. The trial court recommended that the house be sold in six months and that Ms. Blando receive all proceeds from the sale. It also recommended that Ms. Reid pay Ms. Blando $5,000 "up front." Ms. Reid claims that the trial judge's settlement recommendation, its findings of fact and conclusions of law, "clearly indicated that Judge Daugherty had already determined that in his mind Carmie Blando was an injured and innocent party entitled to relief." Ms. Reid did not claim the trial judge was prejudiced until after the trial and the trial judge's adverse decision.

■ Prejudice is the attitude of personal enmity towards the party or in favor of the adverse party to the other party's detriment. *State ex rel. Wesolich v. Goeke,* 794 S.W.2d 692, 697 (Mo.App.1990). It is not the mere possession of views regarding the law or the conduct of a party. *Id.* Prejudice is in the personal sense rather than in the judicial sense and refers to a mental attitude or a disposition of the judge towards a party. *Id.* In order for the alleged bias and prejudice to be disqualifying, it must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case.

*State v. Hunter,* 840 S.W.2d 850, 866 (Mo. banc 1992). Settlement negotiations are not an "extrajudicial" source of information and a judge's participation in settlement conferences does not require disqualification. *United States v. Conservation Chemical Co.,* 106 F.R.D. 210, 234 (W.D.Mo.1985). This is because in pretrial matters, a judge cannot avoid forming and giving expression to tentative opinions on the issues based upon what he has before him. *State v. Lovelady,* 691 S.W.2d 364, 367 (Mo.App.1985). However, such an opinion is not a fixed opinion and the judge can approach the issue with an entirely open mind, putting aside his tentative preliminary opinion and ruling fairly. *Id.* When these standards are applied, disqualifying bias and prejudice has not been alleged by appellants. Furthermore, a judge is entitled to the presumption that he will not undertake to preside in a trial in which he cannot be impartial. *State v. Presley,* 694 S.W.2d 867, 869 (Mo.App.1985). Point I is denied.

## II

In her second point, Ms. Reid claims in four subpoints that the trial court erred in setting aside the warranty deed from Ms. Blando to Ms. Reid. Each subpoint will be addressed separately.

■ The trial court's judgment must be affirmed unless it is against the weight of the evidence, not supported by substantial evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). All facts and reasonable inferences are viewed in light most favorable to the judgment and the judgment is to be upheld under any reasonable theory presented and supported by the evidence. *Shannon v. Welch,* 858 S.W.2d 748, 751 (Mo.App.1993). The trial court is in the best position to determine witness credibility, and the trial court is free to believe or disbelieve any witness' testimony, even if it is uncontradicted. *Id.*

In subpoint A, Ms. Reid claims "the trial court erred in setting aside the deed from plaintiff to Georgianna Reid" because "the trial court's finding that plaintiff did not know that she was signing a warranty deed

is contrary to the overwhelming weight of the evidence."

■ The evidence shows that at the time Ms. Blando signed the warranty deed, she had a patch over one eye and was weak from surgery. The medical records reflect that on July 9, 1990, the day Ms. Blando signed the warranty deed, Ms. Blando was alert, but she was also disoriented. Ms. Reid testified that she brought Ms. Blando beer while she was in the hospital and that she did not know if Ms. Blando had been drinking when she signed the warranty deed. Ms. Blando testified that she thought she was signing a form for her bank. Mr. Robertson did not read or explain the document to Ms. Blando. From this evidence, the trial court could have found that Ms. Blando did not know she was signing a warranty deed. The trial court was free to disregard contrary evidence cited by Ms. Reid on appeal. Subpoint A is denied.

In subpoint B, Ms. Reid claims "the trial court erred in setting aside the deed from plaintiff to Georgianna Reid" because the "trial court's finding that there was no consideration for the deed is erroneous as a matter of law." Ms. Reid cites *Schneider v. Johnson,* 207 S.W.2d 461, 467 (Mo.1948), for the proposition that "under Missouri law, love and affection constitute adequate consideration for a deed." Therefore, she claims because the warranty deed stated, "In consideration of the love and affection I have for my granddaughter ..." the trial court's finding was erroneous as a matter of law.

■ Ms. Reid's subpoint has no merit. The trial court did not set aside the deed because Ms. Blando did not receive consideration. The deed was set aside because it was obtained by Ms. Reid through undue influence. The fact that Ms. Blando received no material consideration for her deed from Ms. Reid does not per se invalidate the deed, but it is an element to be considered with regard to undue influence. *Davis v. Pitti,* 472 S.W.2d 382, 387 (Mo.1971). Subpoint B is denied.

In subpoint C, Ms. Reid claims "the trial court erred in setting aside the deed from plaintiff to Georgianna Reid" because "the trial court's finding that the execution of the

deed was obtained by undue influence of Georgianna Reid over plaintiff is inconsistent with the court's finding that plaintiff did not know that she was signing a warranty deed."

Undue influence is that "influence which by force, coercion or overpersuasion destroys the free agency of the benefactor." *Smith v. Crites,* 781 S.W.2d 189, 191 (Mo. App.1989). A presumption of undue influence arises when evidence demonstrates the benefactor and beneficiary were in a relationship of confidence and trust and when the evidence further discloses facts from which the exercise of undue influence may be inferred, apart from facts which show a confidential relationship. *Id.* Whether Ms. Reid exercised undue influence over Ms. Blando is a factual determination for the trial court; and, therefore, this court must defer to the trial court's findings of fact. *Id.*

Ms. Reid admitted that she was acting in a confidential relationship as Ms. Blando's attorney-in-fact and fiduciary from the time the power of attorney was signed on July 2, 1990. Thus, the presumption of undue influence is applicable. Additionally, facts support the inference that Ms. Reid exercised undue influence. First, Ms. Blando received no consideration from Ms. Reid for her deed. Second, Ms. Blando's mental and physical health was significantly reduced when Ms. Reid presented the deed for her signature. The medical records show Ms. Blando was disoriented on the day she executed the deed. Third, Ms. Reid testified that she brought Ms. Blando beer to the hospital and did not know whether Ms. Blando had been drinking when she signed the warranty deed. Finally, the warranty deed prepared by Ms. Reid's attorney and business partner was not read or adequately explained to Ms. Blando prior to her signing it. The condition of Ms. Blando's mental and physical health was reduced so significantly when the deed was presented for her signature that, combined with the fiduciary relationship existing between Ms. Reid and Ms. Blando and the absence of explanation of the deed and its consequences, a state of undue influence resulted. The trial court properly found that Ms. Blando did not rebut the presumption of undue influence.

Ms. Reid also contends that the theories of undue influence and the contention that Ms. Blando did not know she was signing a warranty deed are inconsistent theories. However, this court will affirm the trial court's judgment regardless of the theory enunciated by the trial judge if it is sustainable as a matter of law under any theory. *Pratt v. Purcell Tire & Rubber Co.,* 846 S.W.2d 230, 232 n. 1 (Mo.App.1993). Subpoint C is denied.

In subpoint D, Ms. Reid claims "the trial court erred in setting aside the deed from plaintiff to Georgianna Reid" because "the trial court's finding that plaintiff was in pain at the time she executed the deed is not supported by any evidence and is further evidence of the prejudice that the trial judge bore against the defendants in this case." The trial court found "[t]he medical records show that Carmie Blando was in pain and at times confused the day of the execution." The medical records disclose that Ms. Blando was in pain on July 9, 1990. The medical records also reveal Ms. Blando was disoriented most of that day. Therefore, the trial court's finding is supported by substantial evidence. Subpoint D is denied.

Point II is denied.

### III

In her third point, Ms. Reid raises three subpoints. Only subpoint A is addressed because the disposition of this subpoint renders the remaining two subpoints moot. In subpoint A, Ms. Reid claims the trial court erred in ordering the property partitioned and sold because Ms. Blando did not request partition relief in her petition, and "therefore, the ordered partition was beyond the scope of the relief prayed for by plaintiff."

Ms. Blando's petition prayed for the court to order the following relief: that the warranty deed executed by Ms. Blando "be rescinded, set aside and declared void; that the court further order that the document entitled 'Warranty Deed' be stricken from the records of the Recorder of Deeds office in Jackson County, Missouri; that the lien on the property be vacated; for costs herein

expended; and for such other and further orders as may seem just and proper."

The powers of a court of equity to adjudicate are broad but are limited to the claim for relief and issues made by the pleadings. *Mills v. Keasler*, 395 S.W.2d 111, 118 (Mo.1965); *Murphy v. Timber Trace Ass'n*, 779 S.W.2d 603, 607 (Mo.App.1989). To the extent that the judgment under review purports to adjudge beyond the issues presented and raised by the pleadings, it is *coram non judice* and void. *Brown v. Wilson*, 155 S.W.2d 176, 180 (Mo. banc 1941).

A proceeding in partition is strictly statutory. *Hughes v. Wilson*, 733 S.W.2d 36, 37 (Mo.App.1987). Chapter 528 RSMo provides the mechanism for seeking partition. Section 528.030 provides that:

> In all cases where lands, tenements or hereditaments are held in ... tenancy in common ... including estates in fee ..., it shall be lawful for any one or more of the parties interested therein, ... to file a petition in the circuit court of the proper county, asking for the admeasurement and setting off of any dower interest therein, if any, and for the partition of the remainder, if the same can be done without great prejudice to the parties in interest; and, if not, then for a sale of the premises, and a division of the proceeds thereof among all of the parties, according to their respective rights and interests.

Although Ms. Blando's petition asked for specific relief and for such relief "as may be just and proper" to the court, partition was not requested as a separate count of Ms. Blando's petition. While the request for such relief as the court deems "just and proper" is more than mere custom and may allow the court to enter relief required to resolve the issues raised by the allegations in the cause pleaded, it is not a panacea for unpleaded causes of action. Ms. Blando did not seek to have the property partitioned and sold. She could have sought this relief under Chapter 528 of Missouri Statutes and Supreme Court Rule 96. Because she did not seek such relief, the court could not order partition. Therefore, the portion of the judgment which orders that "the property is to be partitioned and sold, and the deed of trust held by McGuire Investment Company shall be paid entirely from Ms. Reid's proceeds from the sale of the house at 103 Meyer Boulevard" is void. *Treme v. St. Louis County*, 609 S.W.2d 706, 710 (Mo.App.1980). Subpoint A of Point III is granted.

## IV

In her fourth point, Ms. Reid claims that the

> trial court erred in entering judgment against her for $20,707.67 because, she claims, the court ignored undisputed and unrefuted evidence that [she] delivered $3,500 in cash to [Ms. Blando], paid her expenses while she was a resident at University Towers, gave her money when she went to Las Vegas to visit her daughter, and made other payments to and for the benefit of plaintiff.

This is an issue of witness credibility. The trial court is in the best position to determine witness credibility; and, as the trier of fact in this case, it is free to believe or disbelieve any witness' testimony even if it is uncontradicted. *Shannon v. Welch*, 858 S.W.2d at 751. Therefore, the trial court discernment of Ms. Reid's testimony will not be disturbed. Point IV is denied.

## V

In her final point, Ms. Reid contends that the trial court erred in entering judgment against La Cuticle, Inc. for conversion. A conversion is "any distinct act of dominion wrongfully exerted over one's property, in denial of his right or inconsistent with it." *Reason v. Payne*, 793 S.W.2d 471, 474 (Mo.App.1990). Money represented by a general debt is not subject to a claim for conversion. *Dillard v. Payne*, 615 S.W.2d 53, 55 (Mo.1981). An action for conversion lies only for a specific chattel which has been wrongfully converted; therefore a claim for money may not be asserted in conversion. *Gaffney v. Community Federal Sav. & Loan Ass'n*, 706 S.W.2d 530, 533 (Mo.App.1986). An exception to this rule exists when plaintiff places funds in the custody of defendant for a specific purpose and defendant diverts them to a different purpose. *Hall v. W.L. Brady Inv., Inc.*, 684 S.W.2d 379, 384 (Mo.App. 1984).

La Cuticle, Inc. did not convert Ms. Blando's money. Ms. Blando did not place funds in La Cuticle's custody for a specific purpose, and La Cuticle did not divert the funds to a different purpose. Thus, La Cuticle is not guilty of conversion. This portion of the judgment must be reversed. Point V is granted.

The judgment declaring the warranty deed void and set aside is affirmed as is the judgment against Ms. Reid in the sum of $20,707.67. The portion of the judgment ordering the property to be partitioned and sold and payment of the deed of trust held by McGuire Investment Company entirely from Ms. Reid's proceeds is reversed. However, to effect the equitable relief intended by the trial court to the extent permitted by its jurisdiction, the trial court is directed to amend its judgment to provide that when the property located at 103 East Meyer, owned by Ms. Blando and Georgianna Reid, is sold, the balance of the mortgage then owed McGuire Investment Company or its successor shall be paid first from the proceeds resulting from the sale of the property belonging to Ms. Reid by reason of her interest in the property. The judgment against La Cuticle is also reversed.

All concur.