**In re The Matter of C.N.H.**

**L. K. G., Petitioner–Appellant,**

v.

**M. H., Respondent–Respondent.**

No. 22510.

Missouri Court of Appeals,
Southern District,
Division Two.

May 21, 1999.

Motion for Rehearing and Transfer
Denied June 15, 1999.

Lisa C. Henderson, Buffalo, for Appellant.

Jack Miller, Miller & Winfrey, Lebanon, for Respondent.

KENNETH W. SHRUM, Presiding Judge.

This is an appeal by L.K.G. ("Mother") from a judgment modifying an earlier child custody order. Mother charges that the trial court erred in awarding primary physical custody of her daughter to M.H. ("Father"). Mother also argues that reversal is mandated because the practical effect of the trial court's judgment is to place custody of the child with the paternal great-grandmother without satisfying the requirements for such a custody order as set forth in § 452.375.5(3)(a).[1] Mother's third point charges that the trial judge erred in failing to recuse or disqualify himself from the case because of the appearance that he had prejudged the case. We affirm.

Father and Mother have never been married. On September 28, 1994, when Father was fifteen or sixteen years old and Mother was nineteen, Mother gave birth to their child, C.N.H. ("Daughter"). After Daughter's birth, Mother sued Father to establish paternity, among other things. In September 1996, the trial court found that Father was Daughter's biological father, placed legal and physical custody of Daughter with Mother, established a detailed visitation schedule for Father, and ordered Father to pay child support.

From September 1996 through June 1997, Mother allowed Father temporary custody and visitation in accordance with the decree. On July 3, 1997, Father drove to Buffalo, Missouri, where Mother had been living, to pick up Daughter for a

scheduled visit. Neither Mother nor Daughter was at home. Father then drove to Springfield, Missouri, where he found Mother and Daughter at the home of Mother's adoptive parents. On August 19, 1997, Father filed a "Motion to Modify Decree as to Child Custody," alleging, *inter alia*, that he had been "denied visitation with [Daughter] on reasonable occasions" and that Mother "leaves the minor child with babysitters every evening and denies [Father] the opportunity to see [Daughter] when she is with the babysitters." Mother filed responsive pleadings, including a counterclaim for increased child support.

On April 29, 1998, while his motion to modify was pending, Father went to Springfield, Missouri, to pick up Daughter for a scheduled visitation but, once again, could not find Mother or Daughter. Father did learn, however, that a Greene County court had entered an ex parte order of protection against him that same day. The order precluded Father from visiting with Daughter. From that date through June 10, 1998, Mother continuously denied Father his scheduled visitation with Daughter. Specifically, Mother denied him visitation April 29, 1998; May 1, 2, 3, 6, 13, 15, 16, 17, 20, 25, 27, 29, 30, 31, 1998; and June 3 and 10, 1998.

Mother asserted that she denied visitation due to grave concerns that Daughter had been sexually abused while in Father's care. She admitted, however, that she did not present those claims to the trial court while Father's motion was pending. Moreover, she continued to deny visitation after the ex parte order of protection against Father was rescinded following a hearing on May 11, 1998. Mother stated, "[s]ometimes I opened the door and told [Father] I was refusing [visitation]" and "[s]ometimes I wasn't there." Mother

---

1. All statute references are to Revised Statutes of Missouri 1994, unless otherwise indi- cated.

conceded she had "[n]o authority" to deny Father the court-ordered visitations.

On May 18, 1998, Father moved for an order of temporary custody and asked that Mother be found in contempt of court. After these motions were filed, Mother allowed Father to have his two-week "June visitation" with Daughter. Mother explained why she allowed Father to resume visitation as follows:

> "Q. [to Mother] And isn't it correct . . . the only reason you gave him back his right to visit was because we were two weeks away from coming to court and you knew that if you walked in here and would have denied him this additional time that it would look awful bad for you?"
>
> "A. Not look awful bad for me. I just don't want to jeopardize losing [Daughter] trying to help her."
>
> "Q. And you thought that if you came in and didn't give him this two weeks that it might jeopardize your losing [Daughter]?"
>
> "A. Yes."

The trial court modified the custody order by giving Mother and Father joint legal and physical custody of Daughter. The court awarded Father primary physical custody and gave Mother physical custody on certain weekends and holidays and for two weeks in June and two weeks in July of each year. It found that post-judgment changes in both Daughter's and the parties' circumstances indicated that Daughter's best interests would be served by the modification. Specifically, the court mentioned (a) Mother's denial of Father's court-ordered visitation, (b) that Mother had convinced the court by her testimony that she had no intention of allowing Daughter to develop a proper relationship with Father, and (c) the State's policy that a child's best interests are served by the child having a good relationship with both parents when possible. It found that "Mother has consistently placed her personal interests ahead of the parent-child relationship." Continuing, the court noted

that "[b]oth parents are young and lacking in parenting skills" but also observed "a marked improvement in . . . Father's conduct and attitude since the previous hearing." Finally, the court explained that its primary concern was for the welfare of Daughter and that "granting custody to the Father would effectively make Clydean Pollette [sic] primary caregiver. . . . The Court finds that would be in the best interest of [Daughter]."

This appeal followed.

Mother's first point maintains that there is not sufficient evidence in the record to support the finding that "there was a *substantial and continuing* change in circumstances which would justify modification of the prior custody award," but even if there was such evidence, "there was no substantial evidence that a change in the primary custodian would serve the best interests and welfare of the child." The argument portion of Mother' brief begins by conceding that "[i]nterference by one parent with the decretal rights of visitation of the other is a changed condition which may justify and require modification of a prior custody award," *see e.g., Cornell v. Cornell,* 809 S.W.2d 869, 873 (Mo.App.1991), and that "there are numerous cases that so hold." Even so, Mother says that the following is the "crucial question" to be decided: "Was [Mother's] admitted interference with [Father's] visitation rights in this instance so *substantial and continuing* as to justify the trial court's findings and require a change in custody from [Mother] to [Father]?" (Emphasis supplied.)

 Positing the foregoing as the "crucial question" reveals Mother's apparent misunderstanding of the law. Contrary to Mother's assertions, a finding of a *"substantial and continuing* change" in circumstances is not a prerequisite to the modification of custody decrees. *Friend v. Jackson,* 714 S.W.2d 953, 955[1] (Mo.App. 1986). The "substantial and continuing change" language is part of § 452.370, which concerns a modification of *support.*

*Id.* "That particular section ... [is] not controlling on a modification [of] *custody.*" *Id.* Modifications of custody awards are governed by § 452.410. *Id.* To modify custody under that section, the trial court must find a postjudgment change in the circumstances of the child or the custodial parent and that " 'modification is necessary to serve the best interests of the child.' " *Taylor v. Taylor,* 908 S.W.2d 361, 365[16] (Mo.App.1995) (citations omitted). Accordingly, we analyze Mother's point in the context of § 452.410—not § 452.370— and also with the following principles in mind.

■■■■ Interference by one parent with the other parent's decretal rights is contrary to public policy and society's interest in "assur[ing] children frequent and meaningful contact with both parents." § 452.375.4. *See In re Marriage of Douglas,* 870 S.W.2d 466, 469[2] (Mo.App.1994). *See also A.B.C. v. C.L.C.,* 968 S.W.2d 214, 219 (Mo.App.1998); *Cornell,* 809 S.W.2d at 873. Missouri has traditionally tried to maintain and encourage continued interest, love, and affection between children and noncustodial parents because the link between them in circumstances of divorce, separation, or non-marriage is often uncertain at best. *See Hamilton v. Hamilton,* 886 S.W.2d 711, 715 (Mo.App.1994); *Biby v. Jones,* 886 S.W.2d 665, 667 (Mo.App. 1994). Accordingly, the rule has evolved that if one parent interferes with the decretal rights of the other, such interference constitutes a changed condition that may justify and require a modification of custody provisions. *A.B.C.,* 968 S.W.2d at 219[15]; *Cornell,* 809 S.W.2d at 873. Likewise, one parent's efforts to alienate a child from the other parent is also a changed condition that can form the basis for a change in custody. *A.B.C.,* 968 S.W.2d at 219[15].

■■■■ When reviewing a child custody case, the decision of the trial court is given greater deference than in other cases. *Cornell,* 809 S.W.2d at 873[1]. The standard of review enunciated in *Murphy v.*

*Carron,* 536 S.W.2d 30 (Mo.banc 1976), attends. *A.B.C.,* 968 S.W.2d at 219. This means that we will sustain the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32[1]; *A.B.C.,* 968 S.W.2d at 219[8].

■■■■ A trial court is vested with considerable discretion in determining custody questions, and appellate courts should not overturn the trial court's findings unless they are manifestly erroneous and the child's welfare compels a different result. *Taylor,* 908 S.W.2d at 365[17]. When reviewing a trial court's decision to modify a custody award, we begin with the presumption that the trial court acted in the child's best interest. *A.B.C.,* 968 S.W.2d at 219[11]. "We will not substitute our judgment for that of the trial court so long as credible evidence supports the trial court's beliefs." *Id.* at 219[13].

■■■■ With the foregoing in mind, we do not have a firm belief that the trial court's judgment is wrong. Despite Mother's claims that she denied visitation only because she believed Daughter had been subjected to sexual abuse while in Father's care, that she "was just trying to protect her," and that her actions "were consistent with her concern for her daughter," the trial judge was not "required to accept the denials, excuses, or charges offered by [Mother]." *Cornell,* 809 S.W.2d at 874. The trial judge clearly understood his role in assessing witness credibility as revealed by his comment to the parties at the conclusion of the case, *viz,* "I've ... made some startling notes to myself as to believability of the witnesses today because some of them impressed me as very believable and some of them impressed me as not very believable." The trial judge's ultimate decision indicates that he did not consider Mother's expressed concern that Daughter had been sexually abused was

genuine and sincere. This court's observations in *A.B.C.* are apropos here:

"While we do not seek to belittle [Mother's] allegations or to minimize their seriousness, we cannot ignore that any evaluation of them depends heavily upon the credibility of the witnesses who attested to Daughter's statements, described Father's behavior toward Daughter, and recounted the events surrounding Daughter's injury. The trial court had the opportunity to hear this testimony and observe the demeanor of these witnesses, and consequently was in a far better position than this court to assess their credibility."

968 S.W.2d at 220.

Mother places great emphasis on the fact that interference with Father's visitation was only minimal before April 29, 1998, that she only denied visitation from April 29 through June 10, 1998, and that she allowed resumption of visitation voluntarily and without court intervention. She argues that this demonstrates her amenability to the court's previous orders, that the change of circumstance via her interference with visitation was not "substantial and continuing," and that she recognized the trial court's control of her future role in Daughter's life by "acquiesc[ing]" to the reestablishment of visitation as of June 10, 1998. However, the record in this case supports reasonable inferences contrary to those urged by Mother.

As Mother claims, the record shows she did little to interfere with Father's visitation before April 29, 1998. On April 21, 1998, the trial court set a trial date of July 1, 1998, for Father's motion to modify custody. Notices of the trial setting were sent to the respective lawyers. It was after that, on April 25, 1998, that the claims of child abuse first arose. Mother adduced evidence that on April 25 (several days after Daughter last visited Father), she [Daughter] was unusually quiet, went to the bathroom more often than usual, and ultimately complained of hurting in her vaginal area. Later that day, as Daughter was being bathed, another member of Mother's household announced that Daughter was claiming Father "touched" her in the genital area and that it hurt. Daughter was then taken to a physician and the physician notified the Division of Family Services ("DFS"). Mother also applied for an ex parte order of protection. However, she made no effort to present the abuse accusations to the trial court via motion or other pleading. Moreover, as noted above, Mother did not permit Father to resume visitations when the ex parte order of protection was dismissed. She allowed resumption of visitation only after Father moved for temporary custody and a contempt citation and she realized she might lose custody of Daughter.

Based on these facts, the trial court could have reasonably inferred that the claims of sexual abuse were false, that Mother asserted these claims only after realizing that Father was serious about proceeding with his motion to modify, and that Mother's motive for allowing Father to resume visitation was not Daughter's best interests but was, rather, Mother's self interest in retaining physical custody of Daughter. Also, as explained above, a finding of a "substantial and continuing" change in conditions is not required in order to modify a custody decree. *Friend,* 714 S.W.2d at 955[1]. *See Jones v. Jones,* 902 S.W.2d 363, 365–66 (Mo.App.1995) (holding that a mother's denial to father of temporary custody on nineteen occasions warranted modification).

The record contains substantial competent evidence to support the trial court's decision to modify the custody arrangement. Point I is denied.

■ In her second point, Mother argues that the trial court erred in awarding primary physical custody of Daughter to Father because the effect of that award was to give primary physical custody to Father's grandmother, Clydean Pailette ("Clydean"), who was not a party to these proceedings. Citing § 452.375.5(3)(a),

Mother contends that such an award cannot be valid unless the trial court finds that "each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interests of the child" and unless the third party to whom custody is awarded is made a party to the action. Arguing that none of these requisites were satisfied here, Mother contends that the trial court's custody award must be reversed. We disagree.

Mother's argument suffers from a single, fatal flaw. The trial court did not award Clydean Pailette custody of Daughter. In its findings, the trial court stated:

> "The only bright spot in the testimony presented during this most recent hearing was that of Father's grandmother, Clydean Pollette [sic]. She has apparently been providing considerable assistance in raising [Daughter] and has volunteered to continue to assist Father in doing so. This Court is aware that granting custody to the Father would effectively make Clydean Pollette [sic] primary caregiver considering the work schedule of both parents. The Court finds that would be in the best interest of [Daughter]."

Based on this and other findings, the trial court ordered "[t]hat Mother and Father have joint legal custody of the minor child, but that primary physical custody shall be transferred to Father with Mother to have temporary custody and visitation." By this order, the trial court clearly awarded primary physical custody of Daughter to Father—not Clydean. The fact that the trial court's award may result in Clydean providing a significant portion of Daughter's care is not tantamount to granting Clydean custody of Daughter. Consequently, the trial court's award is not erroneous for failing to comply with the

strictures of § 452.375.5(3)(a) because that provision is inapplicable here. Point II is denied.

We reproduce Mother's third point in full:

> "THE TRIAL COURT ERRED IN NOT DISQUALIFYING OR RECUSING ITSELF AFTER HAVING HAD A PRETRIAL EX PARTE COMMUNICATION WITH THE ATTORNEY FOR [FATHER] WHEN THERE WAS THE APPEARANCE THAT THE COURT HAD RECEIVED INFORMATION CONCERNING THE CASE DURING THAT CONVERSATION WHICH WOULD LEAD A REASONABLE PERSON TO CONCLUDE THAT THE TRIAL COURT HAD PREJUDGED THE MATTER OR HAD OTHERWISE MADE UP ITS MIND WITHOUT HEARING THE EVIDENCE, LEADING A REASONABLE PERSON TO DOUBT THE IMPARTIALITY OF THE TRIAL COURT, PARTICULARLY IN LIGHT OF THE RULINGS AND FINDINGS MADE BY THE COURT."

As a pretrial matter, Father's lawyer tried to set up a conference call with the trial judge and Mother's attorney. The purpose for the conference call was to select a trial date. Mother's lawyer apparently was unable to participate in the call, but she nonetheless consented to Father's lawyer contacting the trial judge ex parte to obtain a trial date. Mother claims—without evidentiary support—that Father's attorney and the trial judge discussed the case "extensively" during the ex parte communication, and that, as a result of the communication, the trial judge was biased and had prejudged the case. After trial, Mother filed a Motion for Disqualification of Judge, which the trial court denied.[2]

---

**2.** Notably, Appellant's third point relied on does not expressly challenge the trial court's denial of her Motion for Disqualification of Judge. Instead, she generically assigns error to his failure to disqualify or recuse himself. Her third point assigns multiple charges of

error and is, therefore, multifarious. *See De-Cota Elec. & Indus. Sup., Inc. v. Continental Cas. Co.,* 886 S.W.2d 940, 941 (Mo.App.1994). Points relied on that attempt to present multifarious claims violate Rule 84.04(d), Missouri Court Rules (1999) and ordinarily do not de-

■ As evidence of the trial judge's prejudgment, Mother states that just a few days after the trial court's ex parte communication with Father's attorney, the trial judge gave Mother's attorney a copy of *A.B.C.*, 968 S.W.2d 214, which is deleterious to Mother's case. Continuing, Mother argues:

> "The only implication that can be drawn from this sequence of events is that the Court was not only aware of the issues in this action, but was provided information concerning those issues in its earlier conversation with [Father's] attorney, which from an objective standpoint, *may have* prejudiced the Court to the detriment of [Mother]. How else would the trial court have known that the instant case involved the issue of denial of visitation due to the alleged sexual abuse of the child? How else would he have known whether the *A.B.C.* case was pertinent to the issues he was about to determine? The circumstances bespeak a predisposition of this Court to rule in favor of [Father] as a result of the ex[ ]parte communication between the Court and [Father's] counsel."

Mother further cites remarks by the trial judge in the transcript as evidence of his prejudgment. During the hearing on Father's motion to modify, the trial court and lawyers engaged in a discussion regarding the admissibility of evidence on Father's Motion for Contempt, which was not being heard at that time. During this discussion, the trial court commented, "It may be that the rulings on the motions to modify will eliminate the need for it" (referring to either a hearing or evidence on the Motion for Contempt). Mother argues that the ex parte communication with Father's lawyer, the actions and comments of the trial judge, and his ultimate findings and judgment are all evidence of the trial judge's bias and prejudgment and, at a minimum, create the appearance of impropriety.

Father denies that his lawyer discussed the merits of the case with the trial judge during their ex parte communication. Father further points out that the trial judge also denied having discussed the merits of the case with Father's counsel during the ex parte communication.

Supreme Court Rule 2, Canon 3(D)(1)(a), provides:

> "A judge should recuse in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where the judge ... has a personal bias or prejudice concerning the proceeding."

In *Blando v. Reid*, 886 S.W.2d 60, 64–65 [2,4] (Mo.App.1994), the court aptly stated:

> "Prejudice is the attitude of personal enmity towards the party or in favor of the adverse party to the other party's detriment. It is not the mere possession of views regarding the law or the conduct of a party. Prejudice is in the personal sense rather than in the judicial sense and refers to a mental attitude or a disposition of the judge towards a party. In order for the alleged bias and prejudice to be disqualifying, it must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case.... [I]n pretrial matters, a judge cannot avoid forming and giving expression to tentative opinions on the issues based upon what he has before him. However, such an opinion is not a fixed opinion and the judge can approach the issue with an entirely open mind, putting aside his tentative preliminary opinion and ruling fairly.... Furthermore, a judge is entitled to the presumption that he will not undertake to preside in a

serve the review of an appellate court. *Id.* (citing *Wulfing v. Kansas City S. Indus.*, 842 S.W.2d 133, 145 (Mo.App.1992)). However, we gratitiously review Appellant's point be-

cause of the subject matter, i.e., recusal or disqualification of a trial judge in a case involving child custody.

trial in which he cannot be impartial." (Citations omitted.)

We find *Blando* particularly instructive here. We believe that the "evidence" cited by Mother is insufficient to demonstrate disqualifying bias or prejudice on the part of the trial judge. There is no indication that the trial judge's ex parte communication with Father's attorney involved the merits of the case.

As to the trial judge's distribution of the *A.B.C.* case, we note that the trial judge in this case also presided over the trial in *A.B.C.* Thus, he was undoubtedly familiar with the case, its facts, and its possible applicability. Furthermore, the trial judge stated on the record that he had made both parties aware of the *A.B.C.* case with the hope that doing so "might spur some settlement of the issues." We do not believe these various matters can reasonably be characterized as "extrajudicial source[s]" from which disqualifying bias or prejudice might stem. *See Blando*, 886 S.W.2d at 64[2]. Likewise, we do not believe the trial judge's actions and comments here demonstrated any personal enmity toward Mother or bias in favor of Father. *See Id.* Consequently, we believe Mother has failed to overcome our presumption that the trial judge would "not undertake to preside in a trial in which he [could not] be impartial." *See Id.* at 65 [4].

■ Father also correctly points out that Mother's motion to disqualify was not timely filed under Rule 51.05[3] and § 508.120. In pertinent part, Supreme Court Rule 51.05 states:

"(a) A change of judge shall be ordered in any civil action upon the timely filing of a written application therefor by any party. *For purposes of this Rule 51, motions to modify child custody . . . filed pursuant to chapter 452, RSMo, shall not be deemed to be an independent civil action unless the judge designated to rule on the motion is not the same judge that ruled on the previous independent civil action. . . .*

"(b) The application must be filed within thirty days after the answer is due to be filed if the trial judge is designated at the time the answer is is due. If no answer is required to be filed, the application must be filed no later than thirty days after the filing of the civil action." (Emphasis added.)

The trial judge who heard Father's motion to modify was the same judge that had presided over Mother's initial paternity action, in which the original decree of custody at issue was entered. Thus, Father's motion to modify is not an "independent civil action" within the meaning of Rule 51.05. It follows that Mother's motion to disqualify the judge, if intended as a Rule 51.05 request, had to be filed in her original paternity suit to be timely filed. Obviously that did not occur as her disqualification motion was filed July 28, 1998, and came *after* the trial of Father's motion to modify. Mother's motion was untimely under Rule 51.05 and was properly denied.

■ In pertinent part, § 508.090.1 provides that a "judge of a court of record may be disqualified in any civil suit for any of the following causes: (1) That the judge is interested or prejudiced." Section 508.120 states that

"no application by a defendant to disqualify a judge shall be granted unless the application therefor is made before the filing of his answer to the merits, except when the cause for the . . . disqualification arises, or information or knowledge of the existence thereof first comes to him, after the filing of his answer in which case the application shall state the time when the cause arose or when applicant acquired information and knowledge thereof, *and the application must be made within five days thereafter.*" (Emphasis added.)

Mother complains here of the pretrial ex parte communication and comments and

---

**3.** All references herein to Rule 51.05 are to Missouri Rules of Court (1995).

circumstances surrounding the trial. She further contends that the judgment ultimately pronounced was in accord with the trial judge's evident prejudice, which she claims further supports her argument of bias. Even so, judgment was entered on July 20, 1998. Mother did not file her motion to disqualify the judge until July 28, 1998. This is more than five days after the judgment was entered. Thus, even if Mother's knowledge or suspicion of the trial judge's alleged prejudice did not "come to her" until such time as judgment was entered, her motion was still untimely under § 508.120. Neither her motion nor her appellate brief alleges that she gained knowledge of the trial judge's alleged prejudice within five days before she filed her motion or anytime after judgment was entered. Consequently, her motion was untimely under § 508.120 and was properly denied.

For all the foregoing reasons, Mother's third point is denied.

The judgment is affirmed.

GARRISON, C.J., BARNEY, J., concur.