JEFFREY W. BATES, Chief Judge.
 

 The judgment dissolving the marriage of Duane Harris (“Father”) and Teresa Harris (“Mother”) awarded each of them joint
 
 *443
 
 legal and physical custody of their daughter, Brittany Harris (“Brittany”). Father appeals from the judgment and argues that reversal is required for two reasons: (1) the trial court erred by actually awarding physical custody of Brittany to Mother’s parents, who were not parties to this proceeding; and (2) the trial court erred in not granting Father sole physical custody because Mother has denied visitation, she has deficient morals and mental health, and Father is a suitable physical custodian. We conclude that the trial court did not err in either respect and affirm its judgment.
 

 I. Standard of Review
 

 In this court-tried case, our review is governed by Rule 84.13(d).
 
 [1]
 

 Lee v. Hiler,
 
 141 S.W.3d 517, 520 (Mo.App.2004). We must affirm the trial court’s judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law.
 
 Murphy v. Carron,
 
 536 S.W.2d 30, 32 (Mo. banc 1976);
 
 Walters v. Walters,
 
 113 S.W.3d 214, 217 (Mo.App.2003).
 
 [2]
 
 In assessing the sufficiency of the evidence, we examine the evidence and the reasonable inferences derived therefrom in the light most favorable to the judgment.
 
 In re McIntire,
 
 33 S.W.3d 565, 568 (Mo.App.2000). When there is conflicting evidence, it is within the trial court’s discretion to determine the credibility of the witnesses, and accept or reject all, part, or none of the testimony it hears.
 
 In re Marriage of Eikermann,
 
 48 S.W.3d 605, 608 (Mo.App.2001). We defer to the trial court’s assessment of witnesses’ credibility and accept the trial court’s resolution of conflicting evidence.
 
 K.J.B. v. C.A.B.,
 
 883 S.W.2d 117, 121-22 (Mo.App.1994). Because a trial court is vested with considerable discretion in determining custody questions, an appellate court should not overturn the trial court’s findings unless they are manifestly erroneous and the child’s welfare compels a different result.
 
 In re C.N.H.,
 
 998 S.W.2d 553, 557 (Mo.App.1999). ‘We will not substitute our judgment for that of the trial court so long as credible evidence supports the trial court’s beliefs.”
 
 A.B.C. v. C.L.C.,
 
 968 S.W.2d 214, 219 (Mo.App.1998). We presume the trial court awarded custody in the child’s best interests based upon the court’s superior ability to assess the credibility of the witnesses, along with their character, sincerity, and other intangibles not completely revealed by the record.
 
 In re Marriage of Sisk,
 
 937 S.W.2d 727, 730 (Mo.App.1996);
 
 Baker v. Baker,
 
 923 S.W.2d 346, 347 (Mo.App.1996). Greater deference is given to a trial court’s decision in matters involving child custody than in any other type of case.
 
 In re D.M.S.,
 
 96 S.W.3d 167, 171 (Mo.App.2003).
 

 II. Facts and Procedural History
 

 The case was tried in September 2003. A summary of the favorable testimony supporting the judgment is set forth below.
 

 Father and Mother were married in Phelps County, Missouri, in 1988. That same year, they moved to Jefferson City, Missouri. Their only child, Brittany, was born in 1993. Father is a union sheet metal worker. Mother became a school teacher in 1997 and was employed by the public school system in California, Missouri. She earned a Master’s degree in school administration in 2000. Brittany
 
 *444
 
 attended a public school kindergarten; thereafter, she attended only Christian schools.
 

 Father drank every day, and his drinking became excessive during the latter stages of the marriage. Father also had a violent temper and often subjected Mother to physical and mental abuse after coming home and drinking. Father’s physical violence included placing Mother in a choke-hold and attempting to push her over a stairway banister, while Brittany and her maternal grandmother were watching, because Father was upset about money he thought Mother had stolen from him. Father also threatened to pound Mother into the ground with his fists and bury her in his parents’ back yard. For a time, Father slept with a gun beside his bed. On two occasions, Mother was forced to leave the family home because of Father’s abusive behavior. The first time, Mother spent the night at a motel with Brittany and Brent, Mother’s child from another relationship. On another occasion, Mother spent one and a half weeks in a shelter for abused women. As a result, Father began disabling Mother’s automobile so she couldn’t leave home to avoid arguing with him.
 

 When Father was being physically and mentally abusive to Mother, she took the children and locked them in another bedroom at the family home. She stayed awake all night because she was afraid of what Father might do. In 2001, Mother locked herself and Brittany in a bedroom to get away from Father. Father broke down the door, which missed Brittany’s head by inches as it was falling, because Mother refused to continue arguing with him.
 

 As a result of this last incident, Father and Mother separated in June 2001. Father continued to reside in Jefferson City. Mother and Brittany moved back to Rolla to live with Mother’s parents, Larry and Wanda Thornhill (“the Thornhills”). Brittany attended school at the Northgate Christian Academy in Rolla. Mother was hired as a teacher in the Rolla public school system.
 

 In June 2002, Mother filed a petition for legal separation in the Circuit Court of Phelps County, Missouri. In Mother’s proposed parenting plan, she sought sole legal and physical custody of Brittany. Father filed an answer and a counter-petition requesting a dissolution of their marriage. In his proposed parenting plan, he requested that the parties be awarded joint legal and joint physical custody of Brittany. His alternating parenting plan proposed that Brittany: (1) spend every other week with Father in Jefferson City and attend Beacon Christian Academy while in Father’s custody; and (2) spend every other week with Mother in Rolla and attend Northgate Christian Academy while in Mother’s custody. A week before trial, however, Father submitted a revised parenting plan requesting primary physical custody of Brittany.
 

 For the first year after the parties separated, there were several occasions when Father had no contact with Brittany. For example, after Father’s Day in 2001, he did not visit or telephone Brittany for six weeks. Father did not establish a pattern of regular visitation with Brittany until after Mother obtained an
 
 ex parte
 
 order of protection against Father that permitted periods of supervised visitation. Thereafter, Father did regularly exercise his visitation rights. This included overnight visits, weekend visitation and a two-week period of visitation during the summer at Father’s home in Jefferson City.
 

 Mother encouraged Brittany to visit her Father, but the parties experienced problems with visitation on three occasions. The first time, Brittany was sick with strep throat. The second time, Father’s
 
 *445
 
 visitation time was reduced — with his acquiescence — from seven days to two days during the 2003 spring break so Brittany could take a trip to Branson, Missouri, with her grandparents. On each of these occasions, Mother attempted to reschedule make-up visitation. Her efforts were unsuccessful because Father was unwilling to take Brittany at the alternate times proposed. He told Mother that it did not fit into his schedule. On the weekend after spring break, however, Father came to Rolla unannounced to pick Brittany up for a weekend of make-up visitation. When Mother refused to turn Brittany over to Father, he summoned the police. The police declined to intervene, and Father was not permitted to take Brittany for the weekend.
 

 In July 2003, Mother quit teaching in order to pursue a Ph.D. degree in Psychology at Indiana State University (“ISU”) in Terre Haute, Indiana. Mother commuted from Rolla to Terre Haute to attend college.
 
 [3]
 
 At the time of trial in September 2003, she was taking three classes each week at ISU: one on Mondays and two on Wednesdays. Mother left Rolla on Sunday evening and returned on Wednesday evening each week when school was in session. While in Terre Haute, she stayed in a small apartment she rented by the week. When Mother was attending school, her parents took care of Brittany. As of September 2003, Mother had three semesters of class work left on her Ph.D. program. At the conclusion of her class work, she intended to do her internship and write her dissertation in Missouri.
 

 After healing testimony from Mother and Father in the courtroom, the trial judge questioned Brittany in chambers outside the presence of her parents. Brittany was nine years old at the time of trial. She was a 4th grader at Northgate Christian Academy in Rolla. Brittany described school as “fun” and liked learning and making good grades. She had been on the honor roll since starting school in Rolla as a second-grader. Brittany liked living with the Thornhills “very much.” When Mother was attending school in Indiana, she did not see Brittany as often. Brittany did occasionally stay with Mother at the apartment in Terra Haute. The judge elicited the following testimony from Brittany concerning Mother’s absences from home to attend school:
 

 Q. Okay. Do you miss your mom when she’s in Indiana when she’s up there at school and you’re not with her?
 

 A. Yes.
 

 Q. Do you miss your dad when you’re not with him?
 

 A. No.
 

 Q. Do you wish you could spend more time with your dad?
 

 A. No.
 

 Q. Do you wish you could spend the same amount of time with your dad?
 

 A. Yes.
 

 Brittany also testified that she often saw Father drink beer when she was with him. During the two-week summer visitation in 2003, Brittany spent several nights attending a local carnival with Father. Each night, Father drank “quite a few” beers. More than once, Father drove Brittany home after he had been drinking at the carnival.
 

 At the close of all the evidence, the trial court stated:
 

 It is obvious to me that both of you love Brittany. Brittany’s in the courtroom. I’m not going to recite what the evidence is. There are things that concern me that I’ve heard as to both sides, anCS I have related a little bit of that before we took our lunch break. Basically
 
 *446
 
 what I have to do is just like everybody else, I have to deal with the evidence before me and make the decision. I can’t make things better or worse; they’re what they are. The attorneys cannot make' things better or worse. Things are what they are and the evidence is what it is, and I’ll make the best decision as to the — as to Brittany that I can in her best interest. Not in Mr. Harris’ or Ms. Harris’ best interest, but what I think is best for Brittany.
 

 In the Final Judgment and Decree of Dissolution of Marriage, the court made the following finding:
 

 That it is in the best interest of the minor child Brittany Lee Harris that the parties be awarded both joint legal custody and joint physical of the minor child pursuant to the parenting plan, which is attached hereto as Exhibit A, and incorporated herein by this reference. That it is in the best interests of the minor child of the parties to have a continuing relationship with both parties. That visitation should be ordered pursuant to the parenting plan.
 

 The trial court drafted its own parenting plan, which awarded Father temporary custody and visitation at “all reasonable times and places” and included, at a minimum, the following parenting time for Father: alternating weekends; two three-week periods each summer; Father’s Day; and alternating holidays. This appeal ensued.
 

 III. Discussion and Decision
 

 In Father’s first point, he claims the trial court effectively granted custody to Mother’s parents, the Thornhills, because they take care of Brittany while Mother is attending classes at ISU. Father argues this was error because the maternal grandparents were not made parties as required by § 452.375.5(5)(a).
 
 [4]
 
 We disagree.
 

 We decided this same issue adversely to Father’s position in the case of
 
 In re C.N.H.,
 
 998 S.W.2d 553 (Mo.App.1999). There, the trial court awarded custody of the couple’s daughter to the father. Mother was awarded visitation. Because of the parents’ work schedules, the trial court recognized that the paternal grandmother would be the “primary caregiver” for the child.
 
 Id.
 
 at 559. On appeal, mother argued that the grandmother had to be made a party in order to comply with the requirements of § 452.375.5(5)(a).
 
 [5]
 
 We found the argument unpersuasive:
 

 Mother’s argument suffers from a single, fatal flaw. The trial court did not award Clydean Pailette custody of Daughter.... [T]he trial court ordered “[t]hat Mother and Father have joint legal custody of the minor child, but that primary physical custody shall be transferred to Father with Mother to have temporary custody and visitation.” By this order, the trial court clearly awarded primary physical custody of Daughter to Father — not Clydean. The fact that the trial court’s award may result in Clydean providing a significant portion of Daughter’s care is not tantamount to granting Clydean custody of Daughter.
 

 Id.
 
 We adhere to our ruling in
 
 C.N.H.
 
 Section 452.375.5(5)(a) has no application here because the trial court did not award third-party custody of Brittany to the Thornhills. Father’s first point is denied.
 

 In Father’s second point, he contends the trial court erred in not granting Father sole physical custody because Mother has denied visitation, she has defi-
 
 *447
 
 dent morals and mental health, and Father is a suitable physical custodian. We treat this contention as an attack upon the sufficiency of the evidence to support the trial court’s decision to award Father and Mother joint legal and physical custody of Brittany.
 

 Father’s argument proceeds upon the implicit assumption that both the trial court and this Court are required to accept as true all of the evidence which Father presented below. Such an argument ignores the applicable standard of review, which we are duty-bound to follow. The evidence presented at trial was in sharp dispute, and it was up to the trial court to decide what evidence to believe. When evidence on an issue is disputed, or when there is contradictory evidence, an appellate court defers to the trial court’s credibility determinations.
 
 Buschardt v. Jones,
 
 998 S.W.2d 791, 796 (Mo.App.1999);
 
 Hankins v. Hankins,
 
 920 S.W.2d 182, 188 (Mo.App.1996).
 

 The evidence favorable to the judgment demonstrated that Mother did not deny Father visitation on numerous occasions, as he contends. Rather, there had only been three instances of problems with visitation. Mother explained the reason for each such occurrence and testified that she offered to reschedule the missed visitation, but it did not fit into Father’s schedule. Father’s complaint that Mother’s morals and mental health are deficient is equally unavailing. This argument is based on Father’s assertion that Mother is addicted to alcohol and prescription drugs and is in denial. Once again, the evidence favorable to the judgment is what we consider in reviewing this point. Mother admitted that she had a substance abuse problem before Brittany was born, but Mother received treatment for this problem during a 30-day stay at a rehabilitation center in 1991. Mother testified that, after she got out of rehabilitation, she no longer drank or abused any type of prescription medication and had been sober for over 12 years. Finally, Father’s claim that he is the more suitable person to have physical custody ignores all of evidence concerning Father’s excessive drinking, violent temper, physical and mental abuse of Mother, and inappi’opriate behavior in the presence of his daughter. While Father may choose to ignore this evidence because it is inconsistent with the arguments he presents on appeal, we are not permitted to do so. The trial court committed no error in denying Father’s request for sole physical custody of Brittany because the court was not required to believe Father’s evidence in deciding the issue of custody. Father’s second point is denied.
 

 The court’s decision to grant joint legal and physical custody to Father and Mother is supported by substantial evidence. Therefore, we affirm its judgment.
 

 SHRUM and BARNEY, JJ., concur.
 

 [1]
 

 . All references to rules are to the Missouri Rules of Civil Procedure (2004).
 

 [2]
 

 .
 
 Murphy
 
 interpreted the provisions of former Rule 73.01(c). The provisions of that rule were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.
 

 [3]
 

 . It took three and one-half hours to complete the 242-mile trip.
 

 [4]
 

 . All references to statutes are to RSMo (2000).
 

 [5]
 

 . In
 
 C.N.H.,
 
 the joinder requirement of the third-party custody provision of this statute was formerly found in 452.375.5(3)(a).